[Civ. No. 17602. Third Dist. Sept. 22, 1978.]

In re DONALD R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DONALD R., Defendant and Appellant.

**COUNSEL**

Robert N. Chargin, Public Defender, and Garrison F. Turner, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARAS, J.**—In proceedings under Welfare and Institutions Code section 602, defendant, a minor, was found by the juvenile court to have

committed a misdemeanor violation of Penal Code section 459 and a felony violation of Penal Code section 496. He appeals from the denial of his section 1538.5 motion to suppress evidence relating to the misdemeanor count.

Sometime between December 31, 1977, and January 2, 1978, the Centro-Mart store in Stockton was burglarized. Food, cigarettes, liquor, and clothing were removed. The police investigator assigned to the case, Detective Kenneth McGuire, was contacted by a confidential reliable informant on January 4, 1978; the informant stated that on the evening of January 3, he had been present at a house party less than a city block from Centro-Mart. There he observed many items of food, liquor, and cigarettes, and was told by the party's hosts "Sheryl Sandstrum and Donnie R." that these had been stolen from the Centro-Mart over the holidays.

McGuire promptly prepared an affidavit for a search warrant which included a request for an indorsement for night service, stating that the stolen items "are primarily perishable items and easily disposed" of. A list of the stolen items was attached. The warrant, endorsed for night service, was issued on January 4 at 11-11:30 p.m., and was served at 12:30 a.m. on January 5.

Defendant's sole contention is that no good cause was shown to justify the warrant's night service. Penal Code section 1533 states that a magistrate, upon a showing of good cause, may in his discretion authorize a night search between 10 p.m. and 7 a.m.

Defendant asserts that the standard to be applied to "good cause" is that enunciated by the court in *People* v. *Watson* (1977) 75 Cal.App.3d 592 [142 Cal.Rptr. 245]. There the magistrate endorsed a search warrant for night service simply on the basis of a police officer's unsworn oral statement that the defendant did not get home until 6 p.m. or later and was not always present at his home. The officer indicated no reason why it couldn't be served between 6 p.m. and 10 p.m. and presented no information indicating that the contraband would not still be there in the morning. The court held that the affidavit must set forth specific facts which show a necessity for night service, including facts from which it can be concluded that the contraband to be seized will not be at the place to be searched between 7 a.m. and 10 p.m. The showing of good cause may be contained either in the affidavit or in a sworn statement. (*People* v. *Watson, supra.*)

██ Defendant asserts that the *Watson* standard was not fulfilled in this case because the only information in the affidavit supportive of a night search is the statement of McGuire that the stolen items were primarily perishable and easily disposed of.

Section 1533 does not require a separate statement of good cause for a nighttime search. "[I]f the affidavit, read in a commonsense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in the warrant is proper. . . . Absent an abuse of discretion, the magistrate's finding of a reasonable necessity of nighttime service will not be disturbed on appeal." (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 35 [121 Cal.Rptr. 269].)

Viewing the affidavit in its totality, we deem it reasonable here for the magistrate to have concluded that nighttime service was proper; he did not thereby abuse his discretion.

McGuire's statement relating to the perishable nature of the stolen goods, without more, would not have been sufficient. (*People* v. *Mardian, supra.*) But the affidavit further stated that the informant had been at a *party* the night before where he had seen the stolen items. Even though he didn't expressly aver that the goods were actually being consumed, the inference is clear that at least the liquor, food, and cigarettes were being so consumed. The fact of the party the preceding evening raises a reasonable inference that the stolen goods were being and would further be dissipated with the passage of each day and hour. The instant case is thus in direct contrast to *Watson* because of the distinct possibility that the evidence might disappear by the next morning. We agree with the juvenile court judge when he stated, "not only are the People of the state . . . entitled to have *some* of the evidence of what was taken in the burglary, . . . they are also entitled to have as much of the evidence as possible . . . ."[1] (Italics added.)

The defendant cites *People* v. *Mardian, supra,* for the proposition that Detective McGuire's general statement about the perishable nature of the goods is not sufficient. But in *Mardian,* the court also stated: "Where, as here, an affiant's general knowledge concerning the disposability of narcotics is coupled with specific facts which lend themselves to the reasonable inference that contraband is soon to be removed from the

---

[1]The justification for this is dual. First of course, the evidence will be used at trial; second, it will presumably be returned to its lawful owner (Pen. Code, § 1407 et seq.).

premises to be searched, sufficient facts are presented to justify the magistrate's authorization of a nighttime search." (*People* v. *Mardian, supra,* 47 Cal.App.3d at p. 35.) Here the disposability of the stolen goods, coupled with facts concerning defendant's actions with reference thereto, is sufficient to demonstrate the propriety of a nighttime search.

In view of the foregoing, we need not consider the claim that the standard set in *People* v. *Watson* overly restricts police action.

The judgment is affirmed.

Puglia, P. J., concurred.

**REYNOSO, J.**—I dissent. A search of a person's home is a drastic intrusion upon the personal rights and security of the homeowner. A nighttime intrusion is of greater magnitude. The statutory and decisional law, therefore, establishes a higher standard of necessity which must be demonstrated for a nighttime search. Thus it is that Penal Code section 1533, permitting a nighttime search, must be strictly construed. And the warrant must conform to the statutory requirement in every material detail. (*People* v. *Mills* (1967) 251 Cal.App.2d 420, 422 [59 Cal.Rptr. 489].)

The standard set forth in *People* v. *Watson* (1977) 75 Cal.App.3d 592 [142 Cal.Rptr. 245], is accepted by the majority as controlling. The court in *Watson* stated the following (at p. 598): "We conclude that the proper standard for 'good cause' as specified in Penal Code section 1533 is as follows: the affidavit furnished the magistrate must set forth specific facts which show a necessity for service of the warrant at night rather than between the hours of 7 a.m. and 10 p.m. This means that the magistrate must be informed of facts from which it reasonably may be concluded that the contraband to be seized will not be in the place to be searched during the hours of 7 a.m. to 10 p.m." Did the affidavit furnish such specific facts to the magistrate? That is, were facts averred which reasonably could lead the magistrate to the conclusion that contraband would not have been in place at 7 a.m. following the signing of the search warrant? In my view, the facts in this case fall materially short of the rule as enunciated by the *Watson* court.

The latest that the burglary could have taken place, according to the record, is at 9 a.m. on January 2, 1978. An informant advised the policeman affiant that he had been at a party at night on January 3. That

is, two nights after the last possible date during which the items could have been removed from the store. That information was passed on to the officer on January 4. The record does not indicate whether that was at 1 a.m. in the morning, late afternoon, or the evening of the 4th. What it does tell us is that between 11 and 11:30 p.m., the officer went to the magistrate's home to obtain the search warrant, and that the warrant was served at 12:30 a.m. on January 5.

The majority correctly state the perishable nature of the stolen goods is not sufficient to warrant a nighttime search. The majority, however, then engage in speculation, as to what might have been. They suggest that since the informant had seen stolen items at a party two nights after the goods were stolen (and two days before the search), one can infer that the stolen items may have been consumed at that party. There appears to be a further assumption that the items continued to be consumed.

All that may or may not be. What is clear is that nothing appears in the affidavit. No statement regarding consumption appears. Further, and more importantly, there is nothing in the affidavit which would suggest that those items would disappear during the night of January 4 and 5 between the hours of 11 and 11:30 p.m., when the search warrant was signed, and the following morning at 7 a.m.

When we recall, as we must, the public policy against nighttime search and decisional law which strictly construes Penal Code section 1533 the conclusion follows. Good cause was not shown; the nighttime search warrant was defective.

A petition for a rehearing was denied October 17, 1978, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1978.